Attorney's man representing the Vasquez-Morenos. The Vasquez-Morenos were asking only for the opportunity to present the merits of their ineffective assistance claim. It's important to remember here that if they can prove the merits of that claim, if they're right, they're the victims here. The notary agreed to represent them, met with them two weeks before the notice of appeal was due, took their money, and then didn't file it on time. The BIA, by refusing to hear the merits of their ineffective assistance claim, and by relying on three erroneous rulings, is essentially letting the notary get away with it. This Court shouldn't rubber stamp the BIA's error and should give the Vasquez-Morenos a first opportunity to present their claim. Well, the notary could be sued. I mean, getting away with it, you know, possibly the notary, if he represented himself, could be criminal prosecuted for impersonating a lawyer, so it's not exactly getting away with it. The question really is whether or not whatever happens with a notary forms a basis for relief for your clients in these proceedings. It's not a question about letting the notary get away with anything. And the law seems to be that you don't get equitable compensation for the person who is not a notary. Well, you can't get equitable tolling on these circumstances unless it's one of those rare cases of unusual circumstances. Yes, Your Honor. Unique circumstances. And the unique circumstances almost always involve a party being misled by the agency of the government. Yes, Your Honor. But here the INS did nothing to mislead your client. The BIA did nothing to mislead your client. Yes, Your Honor. And we believe that Ehringer recognized the fact and recognized what the Vasquez-Morales are asking this Court to do, and that is to extend unique circumstances to include ineffective assistance claims. In both cases, that's reasonable, because it's reasonable for the alien to rely on whoever they're relying on. It's reasonable to rely, of course, on the judge or the regulation or the particular rule at issue. It's also reasonable, as this Court has stated in recent opinions, for the alien, in the immigration context, to rely on counsel. In the Monjarez-Munoz case, which I cite in the reply brief, the Court's ---- You say this is not a lawyer. Yes. So I don't know how this helps you. Yes, Your Honor. Or I'm not even quite sure what this has to do with whether or not they were a lawyer. It's just somebody missed the deadline. Yes, Your Honor. Your client was aware of the deadline. Mm-hmm. They could have filed themselves. They relied on this person. They placed their trust in somebody who goofed it on the ---- who, you know, who happened to miss the deadline. I'm not sure how you get to unique circumstances here. Well, in this case, Your Honor, the notary expressly represented that she was an attorney. Well, whether she was an attorney or not, she missed the deadline. It's not like she represented that she was an attorney and then gave wrongful legal advice. You know, so she cited the Code of Hammurabi instead of the INS Code. She or he, I don't remember what someone, the notary said, I guess, claimed to be an attorney. It's not like he misapplied the law. He missed the deadline. Your Honor, in Juan Paredes-Munoz, this case, this court expressly states that it's reasonable for an alien to give up effective control of his or her case to retain counsel. And that's what happened here. They believed that this person was their counsel. She represented that she was an attorney. And then they put her in charge of their case. They met with her two weeks before it was due, gave her all the paperwork, paid her. And then she made a mistake. They acted reasonably. And that was a case where we found unique circumstances? That was not a unique circumstances case, Your Honor. That dealt with exceptional circumstances beyond the control of the alien in an absentia deportation context. Okay. That's not a unique circumstances case, what we have here. What case do you have that involves unique circumstances other than involvement being misled by the agency? None, Your Honor. But we believe that Dieringer recognizes the need for this kind of relief. I mean, when you say Dieringer recognizes it, how does Dieringer recognize it? Well, in Dieringer, Dieringer involved a late appeal, a late jurisdictional provision. Late appeal to court of appeals? To the Ninth Circuit, yes. Right. In that case, the Petitioner or next friends of the Petitioner filed an ineffective assistance claim. And in that case, the district court ordered the BIA to restart, to reissue its order and restart the filing period. This court affirmed that decision and essentially said there is a way around jurisdictional appeal provisions. And we believe that that rationale, not that rationale, but that ruling should apply here. We believe that Dieringer recognized the need for this type of relief, although it didn't call it equitable filing or unique circumstances. Can I just get your reopening claim? I take it the government agrees that if this is a reopening motion, then it's timely. And so it would be reopened to put in new evidence, and the new evidence would be the ineffective assistance of counsel with regard to the filing of the appeal. Yes, Your Honor. Okay. So that still gets you back. So this all gets you back, no matter what you do, to the issue of whether the time for appeal to BIA can be equitably told. No matter how you get there, you always get back to that question. That's critical, Your Honor. Okay. Thanks. Okay. You've got three minutes and 26 seconds. Would you like to reserve it? Yes, I would. Okay. We'll hear from the government then. Thank you. Good morning, Your Honors. May it please the Court, I'm Allison Drucker representing the United States. The Board of Immigration Appeals decided this case on alternative grounds, any one of which would be sufficient for the Court's affirmance. As to equitable tolling, the Board held that this should not be extended to the time limits for appeal, which, as I believe Judge Kosinski recognizes, are jurisdictional. And the Petitioners appear to concede that. I think you have to go with the Supreme Court on this, that even jurisdictional limits are subject to equitable tolling of some kind. And it might be just the unique circumstances, some kind, of official misconduct. But there's no such thing anymore as a jurisdictional provision that has no possibility of being told. Well, I think that's true under the Circus Law. Certainly in Socop Gonzales, this Court sitting on bank, went to great lengths to make a distinction between jurisdictional limitations and statute limitations. And I think that Supreme Court law has recognized that equitable tolling in general, in either context, should be construed narrowly, as in the Irwin case. So if the BIA is taking the position that there can never be equitable tolling, then it's incorrect. I don't believe that the BIA's decision went that far. I think we would read the footnote that they put, I believe it's on the second page of their decision, where they talk about that it's questionable to have equitable tolling where the complainant is speaking of their own agent as a basis. So you certainly could read that as they're making a distinction which would be consistent with this Court's present case law as to official misconduct and whether that should be extended, which they say no, to ineffective assistance type situations. Could you address that Derringer case? I thought that was pretty interesting what they did there. Yeah. Well, we think that that case was wrongly decided. But we don't think it went so far as to make an extension in the unique circumstances. Certainly that's not explicit anywhere in the ‑‑ in that decision. And we would say that it's even ‑‑ well, Derringer itself is wrong, but it would be even more wrong to go ahead and make such an explicit extension. It's really opening a Pandora's box because, I mean, the purposes of this jurisdiction ‑‑ Well, it's another panel, so it has to be distinguished, right? Was it published? Yes, it's a published decision. Okay. It's another panel, so it has to be distinguished, right? So if you don't want us to apply it. I mean, we can't say it's wrong and then apply it. So it has to be distinguished. So what's the big distinguished ‑‑ Well, I think one possible basis for that is in that case, the court wasn't deciding this issue on a petition for review. This was a case that had gone to the district court on habeas. And in habeas, a district court can deal with collateral issues, whereas court of appeals has a more narrow scope under the Hobbs Act. So I think that would be one basis that it could be distinguished. I guess I didn't understand that. Well, we said ‑‑ It was a jurisdictional limit, right? And it was the agent's misconduct, and it was ineffective assistance, right? And so that's ‑‑ But what happened procedurally is that initially the petition for review came to this court, and the government filed a motion to dismiss, which was granted. And then the petitioners there went into the district court, and relief was granted in a habeas context. And so this court was only reviewing the district court decision, so it was a somewhat different situation than if it had come here on a petition for review. If the court does go ahead and extend this doctrine here from the official misleading more widely to an ineffective assistance situation, it's undercutting the concept of finality. I mean, every time you extend this, you're chipping away at that doctrine. And certainly if you can do something like that in a situation involving a board of immigration appeals, one would think by the same logic you could be doing that with the court's own jurisdictional limitations, I mean, with the courts of appeals. Would you agree that if these folks ultimately get in the door, that they would have to show prejudice? In other words, that had they prevailed, had they gotten the BIA to open the door there, that they would have prevailed? And what do you think the chances are that they would have prevailed? I think the chances are extremely slim, Your Honor, approaching zero. In looking at the record in this case, although there is no transcript from the immigration judge, still there are a number of papers that were put in by the petitioners themselves which discuss the nature of their suspension claim. Now, to get suspension, among other things, you have to show extreme hardship. And their description of the problems that they would face if they were sent back just do not rise to that level. That was intended by Congress to be rather narrow, and they simply don't show anything or mention anything that comes anywhere near that. So I think if they had gone ahead and their appeal had been timely filed with the BIA, they would have lost. Now, besides talking about Derringer, the opposing counsels also relied heavily on Mangeras, and I'd like to mention besides some of the problems with Mangeras not being totally applicable, which have already been mentioned, that case is not completely set yet, you might say. The government filed a panel petition for a hearing in that case, which is still before the Court. I think you should be aware of that. Also, I guess there's some questions about to what extent overemphasizing the reliance upon an attorney, whether that could come into conflict with some of this Court's precedents concerning the requirement for due diligence in an equitable tolling situation. Now, besides having general, you know, opposing this idea of an extension on general principles, we do not believe that this particular case merits an extension of the doctrine, partly because of the prejudice problem and partly because Petitioners here have had multiple opportunities to pursue their case, and they haven't diligently pursued them. First, the notice of appeal was filed late, giving rise to this case as we're discussing it now. Then they filed their motion, which was defective. And even before this Court, before the case was reinstated before this Court, this Court actually dismissed it for failure to prosecute. As an alternative to the equitable tolling ground, the Board also rejected the case for evidentiary deficiencies, and that's a whole alternative basis. So even if this Court wasn't totally convinced about the equitable tolling, that would be an independent reason to affirm the BIA. Unsigned statements are not evidence, and the Board requires motions to be supported by evidence. The statements that were put into the record fall far short of meeting the Lozada requirements. And Petitioners' contentions, to the contrary, the Board does not have a duty to allow We've explained in our brief how the cases that they cite on this, like Sahian, are in fact inapposite. And like the Court, the Board essentially functions as a referee, not an advocate. That's why aliens have a right to see counsel in the first place. It's a consistent system. I'd also like to mention that, in fact, as I said, unsigned statements are not evidence. So there's no evidence in this record that the lateness was caused by ineffective assistance. In fact, if you look at the administrative record, it actually supports the conclusion that the lateness was not due to ineffective assistance. Thank you. Thank you, Your Honors. You have 3 minutes and 21 seconds left. I would like to address a few points that counsel mentioned. The first regards Dieringer and that it arose in the context of a habeas petition. I've not briefed the habeas in this case, but my understanding of a petition for habeas corpus is that there's an in-custody requirement, and I don't believe that it is available  here. I don't believe that the Vasquez-Moranos can be argued to be in custody, and I don't think that that relief is therefore available. In addition, a BIA order of dismissal is final for appeal. So they had the right to come here. Dieringer was different because, in Dieringer, it was an appeal to the Ninth Circuit that was late because of ineffective assistance. In that case, they could not file a motion to reopen with the Ninth Circuit. There was no other alternative. They had to go back down. I mean, they had to go back down to the district court and then come up here. So I don't think that the fact that they had to go to a finder of facts should distinguish that case from this one. The key really is that they, the court, recognized that you can toll a jurisdictional appeal provision. What about prejudice? Yes, Your Honor. What do you think the ultimate chances of prevailing here, because would you acknowledge that these folks would have to show prejudice at the end? Yes, Your Honor. They have to show prejudice. And what prejudice does this record show? I don't believe – I understand that in my briefs, I agree that they've showed it, and I think, or at least it could be understood that I said they showed prejudice. I think that a prejudice determination can't be made now. I don't believe that they have to show prejudice because, one, that issue is not before the court. The BIA didn't rule on it. And, two, it's impossible because we simply don't have the facts. It's true that they will have to demonstrate extreme hardship. Are you familiar with the case of Ettore Berria? I'm sorry? Ettore Berria? No, Your Honor. Well, it's a recent case from this Court which went through a whole series of missteps by the BIA, and at the end we denied the petition because they hadn't shown hardship. They said there was no prejudice because the aliens could not meet the standard for hardship. Yes, Your Honor. Do you think the record here meets the standard for hardship? No, I don't. Because the Vasquez-Marinos concede that their motion is currently defective. I think this case is a special one because we don't have the record before this Court. A prejudice determination means looking at the hearing transcript from before the IJ and saying, you know, does it appear from here that they have any grounds for relief? That's impossible here because, I mean, the administrative record prepared by the government doesn't include that transcript. So those facts simply aren't before the Court, Your Honor. But if they want to get us to say that the BIA was required to let them reopen, don't they have to show us that they would have prevailed had the BIA let them go ahead? Isn't that the standard that is in place? The standard for succeeding on the merits of the motion to reopen, yes, for their underlying claim of ineffective assistance. However, the BIA never looked at the merits of that claim. It ruled on that it was a late motion, that equitable tolling can never apply in these circumstances, and that procedurally the motion was evidentiarily deficient. So the BIA hasn't looked at this. I don't think the Vasquez-Marinos need to prove hardship here. They need to prove it on remand, because that would be the first time that the merits of their case have ever been reviewed. Okay. Time's up. Thank you very much. Thank you. The case is hired. We'll stand some minutes.
judges: Kozinski, Tg Nelson, Restani